**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MELINDA GARCIA,<br><br>    Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:19-cv-01053-BAM<br><br>**ORDER REGARDING SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Melinda Garcia ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Docs. 6, 8, 21.)

1

and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for supplemental security income on December 9, 2014.  AR 173-76.[2]  Plaintiff alleged that she became disabled on July 28, 2008, due to depression, anxiety, learning disabilities, sleep deprivation, ADHD or OCD, gastric reflux, a suicide attempt, self-harm and anger issues.  AR 100, 188.   Plaintiff's application was denied initially and on reconsideration.  AR 100-03, 109-13. Subsequently, Plaintiff requested a hearing before an ALJ.  ALJ Timothy S. Snelling held a hearing on April 11, 2018.  AR 32-71.  ALJ Snelling issued an order denying benefits on August 28, 2018.  AR 12-26.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-5.  This appeal followed.

**Hearing Testimony**

The ALJ held an initial hearing on April 11, 2018, in Fresno, California.  Plaintiff appeared with her attorney, Jonathan Pena.  Kenneth Ferra, an impartial vocational expert, also appeared and testified.  AR 34-35.

Plaintiff testified that she was 22 years old.  AR 38.  She lives in a two-bedroom home with her parents, two sisters and her nephew.  She sleeps in a room with her mom and dad.  Her sisters and nephew sleep in the living room.  AR 42-43.  She currently is in college but did not know what year or the number of credits earned.  AR 44-45.

When asked about her impairments, Plaintiff confirmed her understanding that she has depression, anxiety, a learning disability, ADHD, OCD and GERD, a gastrointestinal issue.  She has stomach problems from time to time, but she does not take medication for it.  AR 39.  She has been diagnosed with a bipolar disorder not otherwise specified with a psychotic disorder.  She has had hallucinations, but they have lessened.  She has a generalized anxiety disorder and a history of marijuana dependence in remission.  She still smokes marijuana weekly for medicinal purposes.  She also is taking psychotropic drugs.  When she gets medications from her psychiatrist, she stops taking

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

marijuana until she has tested the medication. They are trying different medications to find the right cocktail. She does not have a marijuana card. AR 39-42. Plaintiff also confirmed she has a panic disorder without agoraphobia, possible post-traumatic stress disorder and a borderline personality disorder. AR 44.

In response to questions from her attorney, Plaintiff testified that she was recently hospitalized. It was considered a 5150, but it was the only time that it had happened. She has had other incidents of self-harm, which happen about every two months. When she has suicidal thoughts, she can reach out and talk to a professional. A typical episode will last the whole day and she will stay in her boyfriend's house when he goes out of town. She cannot be alone and debates whether to call the suicide hotline. In terms of harm to others, she usually has thoughts of hurting others every day. She is a very angry person. She has physically attacked someone, but she has never spent time in jail or been prosecuted in court. AR 45-49.

Plaintiff testified that she and her boyfriend had been together for two years. He lives in a house on the back his parents' property. She goes over there and spends time in an isolated situation despite knowing that she does not do well when isolated because she does not have privacy at her house. She does not feel safe in her house. She called the police on her family when she was younger, but nobody responded, and she has never decided to call since then. Plaintiff clarified that going to her boyfriend's house is intentional as sort of her outlet. AR 49-51. Plaintiff further clarified that she constantly fights with her father, physically and verbally, and gets into arguments with her sisters. Her nephew occasionally will attack her, punching her hard. She defends herself, but usually attacks her father. AR 51-53. She also gets into verbal arguments with her mother. AR 54.

Plaintiff testified that she is getting therapy to help with anger outbursts. She feels like it is helpful along with the medication, but just not when she is at home. It is triggered by both internal and external forces, such as her surroundings. AR 53-54. She would not have the anger issues if she was not in the situation that she is with her family. She has had periods of time when she did not have issues with her family, such as when out of town visiting relatives in Bakersfield. She would have altercations with relatives in Bakersfield, but not out in public. AR 55-56.

1       Plaintiff confirmed that she has crying spells, but she does not feel better after she cries. She
2  does not get any relief from the release of emotion. When she gets angry, she is not yelling, cussing,
3  belligerent or bellicose. She tends to walk away because she does not like conflict, but people
4  provoke her and don't let her leave. AR 56-57.

5       When asked about school, Plaintiff reported that she has had instances at school where she has
6  wanted to lash out at somebody that was not her relative. She has gone home sad, crying or depressed
7  because of something that occurred at school. Her grades at school are Bs, but lately they are
8  becoming a C, barely passing. She takes smaller classes. She only asks questions when the class ends
9  so that she can see the teacher one-on-one. She does not ask questions during class because she does
10 not like to speak out in front of people. She has rarely left or missed class because she was upset or
11 depressed. However, she dropped two classes because she could not handle it all. She is only in one
12 class, and usually takes one or two classes in a semester. AR 57-59.

13      When asked about sleeping, Plaintiff testified that she takes medication to help her sleep. She
14 does not have any trouble sleeping so long as she has the medication. She takes naps every day. She
15 sleeps more during the day. AR 59-60.

16      On a typical day, she will leave her house at 8:00 a.m. to go to the college and will get home as
17 soon as it is fully closed, around 11:00 a.m. She walks to school because she lives across the street.
18 The only friend she has at school is her boyfriend. She gets Bs and Cs in school and is taking general
19 education classes. She is hoping for a two-year degree and then to transfer. AR 60-63. She does not
20 miss much school and has perfect attendance. AR 68.

21      Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The ALJ asked the
22 VE hypotheticals. For the first hypothetical, the ALJ asked the VE to consider an individual limited to
23 medium work, who could lift and carry fifty/twenty-five, stand and walk and sit six of eight each,
24 could perform all postural activities frequently, including climbing ladders, ropes or scaffolding,
25 ramps and stairs, crouching, crawling, kneeling and stooping, but the individual could not maintain
26 attention and concentration or persistence and pace for complex and detailed work-related job
27 assignments or cope with the stress normally associated with semi-skilled or skilled employment or
28 make judgments on complex and detailed work-related job assignments. The individual also could

4

have no more than occasional face-to-face interaction with the general public, with co-workers and with supervisors. AR 66-67. Additionally, the ALJ asked the VE to assume an individual between late teens and early twenties—22—with a high school education, current city college, and no past work. The VE testified that such an individual could perform medium jobs in the national economy, such as cleaner, harvest worker, and hand packager. AR 67-68.

For the second hypothetical, Plaintiff's counsel asked the VE to assume that the individual from the first hypothetical would be off-task 20 percent of the workday. The VE testified that there would be no jobs for that individual. AR 68-69.

For the next hypothetical, Plaintiff's counsel asked the VE to assume an individual who, because of symptoms would miss work one day a month every month. The VE testified that that this hypothetical individual could not perform any jobs. AR 69.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 12-26. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 14, 2014, the application date. AR 17. The ALJ identified gastroesophageal reflux disease, depression with psychotic features not otherwise specified, anxiety, learning disorder, attention deficit hyperactivity disorder, obsessive compulsive disorder, bipolar disorder, psychotic disorder, post-traumatic stress disorder, panic disorder without agoraphobia and sacroiliitis as severe impairments. AR 17-18. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 18-19.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of medium work. She could lift and carry 50 pounds occasionally and 25 pounds frequently, could stand, walk and sit six of eight hours each with normal breaks, could frequently perform all postural movements like climbing ladders, ropes,

scaffolding, ramps and stairs, stooping, crouching, crawling and kneeling.  She could not maintain attention, concentration, persistence, or pace for complex and detail-related job assignments.  She also could not cope with the stress of semi-skilled or skilled employment, could not make judgments on complex and detailed job-related assignments and could have no more than occasional face-to-face interaction with the general public, co-workers, and supervisors.  AR 20-25.  With this RFC, the ALJ found that Plaintiff could perform jobs in the national economy, such as cleaner, harvest worker and hand packager.  The ALJ therefore concluded that Plaintiff had not been under a disability since October 14, 2014, the date the application was filed.  AR 25-26.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such

severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

**DISCUSSION**[3]

Plaintiff contends that the ALJ erred by (1) failing to address certain disabling limitations identified by the consultative psychological examiner, Elke M. Kurpiers, Ph.D.; (2) relying on an RFC that was not supported by substantial evidence of record; and (3) failing to identify and obtain a reasonable explanation for conflicts between VE testimony and the requirements of the Dictionary of Occupational Titles.("DOT").

**1. Consultative Examiner Opinion**

Plaintiff first argues that the ALJ erred by failing to address certain limitations identified by the consultative psychological examiner, Dr. Kurpiers, which are incompatible with an ability to sustain full-time work activity. (Doc. 18 at 8-11.)

On April 11, 2015, Dr. Kurpiers completed a consultative psychological evaluation of Plaintiff. AR 326-32. On mental status examination, Plaintiff had no evidence of physical impairments, her eye contact was appropriate, and she was cooperative. Dr. Kurpiers identified some inconsistencies in Plaintiff's report and Plaintiff "was felt to exaggerate problems at times." AR 328. Her psychomotor behavior was within normal limits and she presented as calm and pleasant. Her affect was bland, and her mood was normal, without evidence of clinical anxiety or depression. She was coherent and in touch with reality with no evidence of psychosis. She reported hearing voices and very rare weird visions. She was alert and fully oriented, her speech was clear and fluent and there was no evidence of cognitive defects. Her intellectual abilities were grossly estimated be within low normal to normal limits. AR 328. She was reserved, calm and polite with no evidence of social withdrawal, impulsivity

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

or hostility. AR 329. On psychological testing, Plaintiff scored around the Low Average/Borderline range on the WAIS-4 for intellectual abilities and the WMS-4 for memory and learning. AR 329-31.

Dr. Kurpiers diagnosed Plaintiff with a provisional depressive disorder not otherwise specified, cannabis abuse and borderline personality disorder. AR 331. Dr Kurpiers suggested that Plaintiff was not capable of handling funds in her own best interests. When asked to provide statements of Plaintiff's functional limitations, Dr. Kurpiers stated:

> A. The claimant does not appear to have any medical or physical restrictions. She has restrictions relating to personality disturbance, including interpersonal dysfunction and anger.
> B. She appears to have severe difficulties in maintaining social functioning.
> C. She scored around the low average/borderline range on measures of attention and pace. Her persistence was satisfactory in this exam. She graduated from high school at age 17 but reports dropping out of college.
> D. Repeated episodes of emotional deterioration in work-like settings are anticipated due to interpersonal difficulties, mood disturbance and negative attitude toward working.

AR 332. Dr. Kurpiers also provided statements of limitations in the following areas:

> 1. The claimant is capable of understanding, carrying out and remembering simple instructions. She had no difficulty understanding and following instructions in this exam.
> 2. Her ability to respond appropriately to coworkers, supervisors and the public appears impaired.
> 3. She has the ability to respond appropriately to usual work situations.
> 4. Her ability to deal with changes in a routine work setting appears mildly impaired.

AR 332.

In formulating Plaintiff's RFC, the ALJ assigned "great weight" to Dr. Kurpiers' opinion, stating:

> The claimant psychological consultative examiner opined the claimant was capable of understanding, remembering, and carrying out simple instructions, had an impaired ability to interact with others, could respond appropriately to usual work situations and deal with changes in a routine work setting (Exhibit 3F/7). The undersigned gives this opinion great weight, as it is supported by and consistent with the medical evidence of record. The claimant's normal thought process supports the claimant would be capable of simple instructions Exhibits 2F/19; 5F/11, 15, 22; 6F2; 9F/3; 12F/1, 5, 9, 12). The claimant's noted isolation supports the claimant's ability to interact with other is impaired (Exhibit 6F/20). The claimant normal insight and judgment support the claimant could respond appropriately to normal work situations and deal with changes in a routine work setting Exhibit 2F/19; 5F/11, 15, 22; 6F/2; 9F/3; 12F/1, 5, 9, 12).

AR 23-24.

Plaintiff claims that ALJ erred by failing to address (and include in the RFC) Dr. Kurpiers' conclusions that Plaintiff "appears to have severe difficulties in maintaining social functioning;" "repeated episodes of emotional deterioration in work-like settings are anticipated;" "her ability to respond appropriately to coworkers, supervisors and the public appears impaired;" and she is not capable of handling funds in her best interest. AR 332.

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r. of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "Where an ALJ accords substantial or great weight to a physician's opinion, he must either incorporate their findings into the RFC or offer an explanation for why he chose not to accept them." *Sahyoun v. Saul*, No. 2:18-CV-576-EFB, 2020 WL 1492661, at *3 (E.D. Cal. Mar. 27, 2020), citing *Martin v. Comm'r of Soc. Sec. Admin.*, 472 Fed.App'x 580 (9th Cir. 2012) (unpublished) ("The administrative law judge (ALJ) erred when formulating Martin's residual functional capacity (RFC) because the RFC neither incorporated Dr. Steiner's opinion of Martin's work limitations nor gave specific and legitimate reasons for rejecting it.") and *Neufeld v. Berryhill*, 2018 WL 4739699, at *6, (C.D. Cal. Sept. 30, 2018) ("Having afforded 'great weight' to the opinions of Dr. Bartell and Dr. Loomis, the ALJ was bound to either incorporate their findings as to Plaintiff's limitations or explain why she decided not to accept them."); *see also Bain v. Astrue*, 319 Fed.App'x 543, 545-46 (9th Cir. 2009) (holding ALJ erred in not including consultative examining psychologist's moderate limitations in the RFC, despite specifically crediting these limitations in the opinion); *Flores v. Saul*, No. 1:18-cv-01523-SKO, 2020 WL 509098, at *5 (E.D. Cal. Jan. 31, 2020) (finding ALJ erred by assigning great weight to consultative psychologist's opinion, but failing to provide specific and legitimate reasons for rejecting significant portions of the opinion); *Wascovich v. Saul*, No. 2:18-cv-659-EFB, 2019 WL 4572084, at *3-*5 (E.D. Cal. Sept. 20, 2019) (finding ALJ erred by assigning substantial weight to consulting examiner's opinion that the plaintiff had a mild to moderate impairment in her capacity to maintain regular attendance, but failed to account for the limitation in the RFC).

Contrary to Plaintiff's argument, the ALJ appropriately accounted for Dr. Kurpiers' limitations in the RFC finding. The ALJ's RFC determination—which precluded Plaintiff from performing complex and detailed job-related assignments, semi-skilled or skilled employment and having no more than occasional face-to-face interaction with the general public, co-workers, and supervisors-- adequately addressed Dr. Kurpiers' medical opinion that Plaintiff was unable to handle funds in her own interest and that her ability to respond appropriately to coworkers, supervisors and the public appeared "impaired." AR 20, 332. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding an ALJ may translate assessed mental limitations into "the only concrete restrictions available to him," which does not constitute a rejection of that opinion).

With regard to Dr. Kurpiers' statements of severe difficulties in maintaining social functioning and repeated episodes of emotional deterioration in work-like settings (AR 332), the Commissioner correctly notes that Dr. Kurpiers' comments on these limitations responded to a question about the four functional domains (AR 333 "Describe the claimant's functional limitations specifying: A. Any restrictions of daily activities. B. Difficulties in maintaining social functioning. C. Difficulties of concentration, persistence and pace. D. Repeated episodes of emotional deterioration in work-like situations."). (Doc. 19 at 9.) The Commissioner argues that at the time of Dr. Kurpiers' examination in 2015, the agency used those four domains when evaluating mental impairments, but in 2017, the agency changed those domains. *Compare* 20 C.F.R. § 416.920a(c)(3) (2015) *with* 20 C.F.R. § 416.920a(c)(3) (2017). The Commissioner contends that the ALJ used the new domains, which did not include episodes of decompensation, and, thus, "Dr. Kurpiers's assessment about emotional deterioration or decompensation was obsolete by the time of the ALJ's decision, and the ALJ reasonably did not include her response to that obsolete question in his 2018 decision." (Doc. 19 at 9.)

As suggested by the Commissioner, the ALJ used the following broad areas of functioning in evaluating Plaintiff's mental impairments: "understanding, remembering, or applying information; interacting with others; concentrating persisting, or maintaining pace; or adapting or managing themselves." AR 18. However, even if applicable, the ALJ would not have committed error by

failing to include episodes of decompensation in the RFC. As courts have explained, the issue of whether Plaintiff suffered episodes of decompensation related to the ALJ's step two and step three determinations, not the RFC. Section 416.920a "episodes of decompensation" were part of the psychiatric review technique considered in rating the severity of mental impairments at steps two and three of the sequential evaluation process, not the RFC assessment. *See*, *e.g.*, *Lyons v. Colvin*, No. CV 14-00605-DMG (KK), 2015 WL 9701184, at *28 (C.D. Cal. June 11, 2015), report and recommendation adopted, No. CV 14-00605-DMG (KK), 2016 WL 164240 (C.D. Cal. Jan. 11, 2016) ("whether Plaintiff suffered episodes of decompensation related not to the ALJ's RFC determination, but rather to the ALJ's Step Two determination as to whether Plaintiff's mental impairments were severe, as well as to the Step Three analysis;" concluding ALJ did not commit error by not including episodes of decompensation in her determination of plaintiff's RFC), (citing 20 C.F.R § 416.920a; SSR 96-8p; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C); *see also Coleman v. Astrue*, No. 07–CV–1722–JM (JMA), 2009 WL 861864, at *11 (S.D. Cal. Mar. 26, 2009) ("that Plaintiff would have one or two periods of decompensation related not to the RFC determination at steps four and five of the sequential evaluation process, but rather to the determination at step two whether Plaintiff's mental impairments were severe (as well as to the step three analysis);" concluding that ALJ did not commit error by not including the one or two episodes of decompensation in his determination of plaintiff's RFC); *Langford v. Astrue*, No. CIV S–07–0366 EFB, 2008 WL 2073951, at *3 (E.D. Cal. May 14, 2008) (finding that the ALJ was under no obligation to incorporate the findings from the psychiatric review technique in his ultimate assessment of plaintiff's RFC at steps four and five); *Lopez v. Astrue*, No. C 07–2649 PJH, 2008 WL 3539623, at *7 (N.D. Cal. Aug. 12, 2008) (finding ALJ was under no obligation to include findings from a psychiatric review technique in his ultimate assessment of claimant's RFC at step four because such limitations are relevant instead at steps two and three). Thus, the ALJ would not have been required to incorporate Dr. Kurpiers' assessment regarding episodes of decompensation in the RFC finding.

Further, as to the assessment of severe difficulties in social functioning, the ALJ implicitly rejected Dr. Kurpiers' opinion, finding that Plaintiff had only moderate limitations in interacting with others based on Plaintiff's being cooperative during all examinations. AR 18-19. An ALJ may

11

discount a medical opinion that is inadequately supported by clinical findings. *See Britton v. Colvin*, 787 F3d 1011, 1012 (9th Cir. 2015); *see also Burrell v Colvin,* 775 F.3d 1133, 1140 (9th Cir. 2014) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings."); *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). Here, the record relied upon by the ALJ reflects that on mental status examinations Plaintiff was noted to be cooperative. AR 304, 349, 353, 360, 427, 438, 442, 449. On mental status examination, Dr. Kurpiers also noted that Plaintiff's presented as calm, pleasant, reserved, and polite, with nothing unusual about her behavior or no evidence of social withdrawal, impulsivity or hostility. AR 328, 330.

### 2. Mental RFC

Plaintiff additionally contends that the substantial evidence of record does not support the ALJ's RFC limiting Plaintiff to no more than occasional face-to-face interaction with the general public, co-workers and supervisors. (Doc. 18 at 11-15.) Plaintiff first argues that this finding is not supported because the ALJ determined at step two of the sequential evaluation that she suffered from numerous "severe" mental impairment and there is extensive evidence that she suffers from severe psychological impairments. (*Id.* at 12-13.) However, "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10F.3d 678, 680 (9th Cir. 1993).

Second, Plaintiff appears to argue that the RFC limitation to no more than occasional interaction is not supported because she was involuntarily psychologically hospitalized in 2017. (Doc. 18 at 13.) Plaintiff's argument relies on speculation that her hospitalization precludes her from occasional interaction with the general public, co-workers and supervisors. This is not sufficient.

Third, Plaintiff argues that the limitation to occasional interaction is supported by her "credible testimonial symptomology evidence of record, …which was harmfully erroneously rejected by the ALJ absent the requisite 'clear and convincing' reasons." (Doc. 18 at 13.) In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*,

759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 20-21. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints. First, the ALJ considered that Plaintiff's statements were not entirely consistent with the medical record. AR 21. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In this case, the ALJ considered record evidence that undermined Plaintiff's complaints of totally disabling symptoms from her mental impairments. For instance, the ALJ considered that Plaintiff was treated in 2014 for her mental impairments before the alleged onset date, and while she had an anxious and irritable mood, her mental status examination showed normal appearance, memory, judgment, insight, attitude, attention and thought process. AR 21, 304. When Plaintiff presented for a psychological consultative examination in April 2015, her mental status examination showed normal grooming, normal mood, normal thought process, full orientation, and she was noted to be reserved, calm and polite. AR 21, 328, 330. The ALJ indicated that Plaintiff's remaining mental status examinations in 2015 were normal except with some notations of hallucinations and depressed or anxious mood. AR 21, 349, 353, 360; 363; 446. The ALJ further identified that Plaintiff's mental examinations through 2016 were normal, except for noting an anxious mood. AR 22, 442, 444. The ALJ acknowledged Plaintiff's hospitalization in September 2017, but then noted that upon discharge, Plaintiff was described as stable with no suicidal ideations and no mood disturbances. AR 22, 434, 476. Thereafter, in October 2017 and in 2018, her mental status examinations were generally normal except for notations of an anxious mood. AR 22, 438, 440.

Second, the ALJ considered that Plaintiff's activities of daily living were not consistent with disabling levels of mental functions, including her ability to do a variety of household chores, go to the gym, walk her dogs and take care of herself.  AR 22, 400-01.  An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between a claimant's testimony and the claimant's reported activities.  *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014); *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (engaging in daily activities that are incompatible with the severity of symptoms alleged can support an ALJ's determination to discount a claimant's subjective testimony).  The ALJ reasonably determined that Plaintiff engaged in a somewhat normal level of daily activity and interaction and that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment."  AR 22.

Third, and finally, the ALJ considered that medications helped to relieve Plaintiff's symptoms. AR 22-23.  "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

**3.  Step Five**

Plaintiff first argues that the ALJ erred at step five by failing to identify or resolve the conflict between the RFC limiting her to no more than occasional face-to-face interaction with the general public, co-workers, and supervisors and the Dictionary of Occupational Titles ("DOT") description of the occupations of cleaner (DOT #381.687-018), harvest worker (DOT #403.687-018), and hand packager (DOT #920.587-018).

An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, why it conflicts. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling 00-4p).  However, Plaintiff admits that the DOT "is silent on the issues of either the amount (percentage of time) or the type (i.e., face-to-face) interaction is required to perform a specific job." (Doc. 18 at 17). There is no apparent conflict between VE testimony and the DOT on an issue that the DOT does not address. *See Dewey v. Colvin*, 650 Fed. App'x. 512, 514 (9th Cir. 2016); *Pena Martinez*

14

*v. Saul*, No. CV 18-06155-AS, 2019 WL 3818205, at *13 (C.D. Cal. Aug. 14, 2019) (finding no conflict between the VE's testimony and the DOT where DOT silent on issue).[4]

      Plaintiff additionally argues that the RFC limitation to work that requires no judgments on complex and detailed job-related assignments and no complex or detail-related job assignments preclude her from performing two of the three jobs identified by the VE—hand packager and cleaner-- because they have Level 2 Reasoning requirements. (Doc. 18 at 20-21.) Even if the ALJ erred in finding that Plaintiff could perform jobs requiring Level 2 Reasoning, any such error is harmless because the ALJ found that Plaintiff could perform the occupation of harvest worker, which requires only Level 1 Reasoning. AR 25; Harvest Worker, Fruit, DICOT 403.687-018, 1991 WL 673307. The VE testified that there were 140,000 harvest worker jobs in the national economy. AR 25, 68. This is a sufficient number of jobs to render Plaintiff not disabled, even if the other jobs of cleaner and hand packager were not available. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1110 n.7 (9th Cir. 2017) (observing that 2,500 jobs in California, or 25,000 nationwide, constitute a significant amount of work in the regional and national economies); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (finding that 25,000 jobs represents a significant number of jobs in several regions of the country).

## **CONCLUSION**

    Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

---

[4] Moreover, for each of the identified jobs, the DOT states: "People: 8 – Taking Instructions-Helping, N-Not Significant."  *See* Cleaner, Industrial, DICOT 381.687-018, 1991 WL 673258 (")"; Harvest Worker, Fruit, DICOT 403.687-018, 1991 WL 673307 ("People: 8 – Taking Instructions-Helping, N-Not Significant"); Packager, Hand, DICOT 920.587-018, 1991 WL 687916) ("People: 8 – Taking Instructions-Helping, N-Not Significant"). There is no apparent conflict between this description and a limitation to occasional face-to-face interaction with the general public, co-workers and supervisors.

The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Melinda Garcia.

IT IS SO ORDERED.

| Dated: | **March 19, 2021** | /s/ *Barbara A. McAuliffe* |
|---|---|---|
| | | UNITED STATES MAGISTRATE JUDGE |